UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: WEBER MARINE, LLC                     CIVIL ACTION

                                             NO: 18-06359

                                             SECTION: T (2)

**ORDER**

Claimants, Rodolfo Dayandante, Von Charles Dalida, and SBI Reggae Shipping Company Limited, have filed a motion to modify or lift the Court's previous order directing issuance of a restraining order against prosecution of their claims[1] and thereby allow Claimants to proceed to assert their rights in the state court proceeding.[2] Complainant, Weber Marine, LLC, as Owner and Operator of the M/V WILD WES, has filed a response opposing the motion.[3] For the reasons set forth below, the Motion to Modify or Lift Stay[4] is GRANTED.

On June 24, 2018, the M/V SBI REGGAE, a bulk carrier owned by SBI Shipping, was moored in the lower Mississippi River at the CGB 134 Buoy.[5] Eight members of the crew of the M/V SBI REGGAE, all Philippine nationals, were being transported from the M/V SBI REGGAE to shore by the M/V WILD WES, a crew boat owned by Weber Marine, LLC. The master of the M/V WILD WES was Gary Jenkins, who was employed by Weber Marine. Captain Jenkins

---

[1] R. Doc. 4.
[2] R. Doc. 59.
[3] R. Doc. 61.
[4] R. Doc. 59.
[5] R. Doc. 59-1, p. 1; *see also* R. Doc. 55.

1

testified that, during the five-minute trip from the M/V SBI REGGAE to the Weber Marine dock, he fell asleep, allowing the M/V WILD WES to allide with a moored dumb barge just downriver from the intended Weber Marine dock.

On June 29, 2018, Weber Marine filed its Complaint as Owners and Operators of the M/V WILD WES, seeking Exoneration From and/or Limitation of Liability.[6] On July 3, 2018, Claimant Rodolfo Dayandante filed suit in St. John the Baptist Parish against Weber Marine, Inc., alleging damages and injuries arising from the allision. On July 26, 2018, this Court entered its Order enjoining the claims against Weber Marine or the M/V WILD WES in any other court or proceeding and setting the deadline for all claimants to assert claims.[7] On September 28, 2018, all Claimants filed their answers and claims in the limitation proceeding.[8]

The remaining Claimants now seek to lift or modify the stay and return to state court to proceed against Weber Marine in the pending state court case.[9] Claimants rely primarily on *Odeco Oil and Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 674 (5th Cir. 1996) ("*Odeco II*"), and, pursuant to that ruling and *In re Tidewater, Inc.*, 249 F.3d 342, 346 (5th Cir. 2001), have stipulated the following: (1) that this Court has exclusive jurisdiction to determine the statutory right of Weber Marine, as vessel owner of the M/V WILD WES, to limitation of liability under 46 U.S.C. §§ 30505 *et seq.*, specifically reserving their rights to deny and contest in this Court all assertions and allegations made by Weber Marine in its Complaint; (2) that, in the event there is a judgment

---

[6] R. Doc.1.
[7] R. Doc. 4.
[8] R. Docs. 6 and 7. Two claimants have settled their claims: Carlos Escalona and Rey Saldavia.
[9] R. Doc. 59.

in their favor in any state court action, now pending or yet to be brought, totaling in excess of $130,000.00 (or whatever sum the Court determines is the appropriate limitation fund amount), Claimants will not seek to enforce any judgment beyond the Court's finding as to the value of the vessel and her pending freight, unless and until this Court denies Weber Marine's right to limitation of liability in this matter; (3) that Claimants will not, in any state court action now pending or yet to be brought, seek any judgment or ruling on the issue of Weber Marine's right to limitation of liability or on the issue of the possible value of the limitation fund, and the proper value of the limitation fund based on any judgment that may be entered in any other state court action now pending or yet to be brought; (4) that if, and only if, Weber Marine is entitled to limitation of liability as determined by this Court, Claimants agree they will divide the recovery out of the limitation fund on a pro rata basis, based on each Claimant's award in any state court proceeding; and (5) that Claimants agree to consolidate their respective claims in one state court proceeding, such that the issue of liability on the part of Weber Marine and/or its insurers, as well as Claimants' total damages, are tried at one time in one state court trial.[10] Claimants contend their stipulations adequately protect the right of Weber Marine to seek limitation of its liability in this Court, after a state court trial on liability and damages is completed.[11]

Weber Marine, in its opposition, argues that upsetting trial in this Court at this late date creates undue prejudice and a waste of time, because the issues pertaining to limitation are ready to be tried and should take only two or three days to complete.[12] Weber Marine concedes that

---

[10] R. Doc. 59-3 (Exhibit "A"), pp. 1-2.
[11] R. Doc. 59-1, p. 4.
[12] R. Doc. 61, p. 1.

Captain Jenkins fell asleep while at the helm of the M/V WILD WES, and therefore the Court would need to decide only whether Weber Marine lacked privity or knowledge and can limit its liability in this matter.[13]

**LAW and ANALYSIS**

In *Odeco II*, the Fifth Circuit explained:

> A shipowner facing potential liability for an accident occurring on the high seas may file suit in federal court seeking protection under the Limitation Act. The Limitation Act allows a shipowner, lacking privity or knowledge, to limit liability for damages arising from a maritime accident to the "amount or value of the interest of such owner in such vessel, and her freight then pending." 46 U.S.C.A. § 183(a).[14] The Limitation Act is designed to protect shipowners in those cases in which "the losses claimed exceed the value of the vessel and freight." *Magnolia Marine Transport Co.* [*v. Laplace Towing Co.,* 964 F.2d 1571, 1575 (5th Cir. 1992)]. A shipowner's right to limitation, however, is cabined by the "saving to suitors" clause. *See* 28 U.S.C. § 1333(1) (giving federal district courts exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction," but "saving to suitors in all cases all other remedies to which they are otherwise entitled"). The saving to suitors clause evinces a preference for jury trials and common law remedies in the forum of the claimant's choice. *See Magnolia Marine Transport Co.,* 964 F.2d at 1575). Although tension exists between the Limitation Act and the saving to suitors clause, "the [district] court's primary concern is to protect the shipowner's absolute right to claim the Act's liability cap, and to reserve the adjudication of that right in the federal forum." *Magnolia Marine Transport Co.,* 964 F.2d at 1575.
>
> In mediating between the right of shipowners to limit their liability in federal court and the rights of claimants to sue in the forum of their choice, federal

---

[13] *Id.* Federal courts have exclusive admiralty jurisdiction to determine whether the vessel owner is entitled to limited liability. *See Ex Parte Green*, 286 U.S. 437, 439-40, 52 S.Ct. 602, 603, 76 L.Ed. 1212 (1932) (holding that the admiralty court's jurisdiction over issues bearing on the right to limited liability, such as "privity or knowledge," is exclusive). In limitation proceedings, as in all admiralty cases, there is no right to a jury trial. *See Waring v. Clarke*, 46 U.S. (5 How.) 441, 459, 12 L.Ed. 226, 235 (1847) (holding that the Seventh Amendment does not provide for jury trials in admiralty cases).

[14] This Limitation Act provision is now found at 46 U.S.C. § 30505: "Except as provided in section 30506 of this title, the liability of the owner of a vessel for any claim, debt, or liability described in subsection (b) shall not exceed the value of the vessel and pending freight."

courts have developed two instances in which a district court must allow a state court action to proceed: (1) when the total amount of the claims does not exceed the shipowner's declared value of the vessel and its freight, and (2) when *all claimants* stipulate that the federal court has exclusive jurisdiction over the limitation proceeding, and that the claimants will not seek to enforce a damage award greater than the value of the ship and its freight until the shipowner's right to limitation has been determined by the federal court. In both instances, allowing the state court action to proceed is contingent on protecting the "absolute" right of the shipowner to limit his or her liability.

74 F.3d at 674 (citations omitted in part).

Claimants may "transform a multiple-claims-inadequate-fund case into the functional equivalent of a single claim case through appropriate stipulations, including stipulations that set the priority in which the multiple claims will be paid from the limitation fund," so long as the stipulations adequately protect the shipowner's right to obtain limitation of liability from the limitation court.[15] When there is more than one claimant, and the total amount of the claims exceeds the claimed amount of the limitation fund, the claims are adequately prioritized when all claimants stipulate to the payment of claims on a pro rata basis.[16]

In this case, Weber Marine does not dispute that Claimants' stipulations follow Fifth Circuit jurisprudence and thus adequately protect its absolute right to obtain limitation of liability in this Court. Instead, Weber Marine argues that Claimants waited too late, such that any further

---

[15] *See Beiswinger Enterprises. Corp. v. Carletta*, 86 F.3d 1032, 1038 (11th Cir. 1996) ("By entering such stipulations, the damage claimants effectively guarantee that the vessel owner will not be exposed to competing judgments in excess of the limitation fund. Without such competition for the limitation fund, a *concursus* is unnecessary, just as in a true single claimant case, and the claimants may litigate liability and damages issues in their chosen fora."); *see also Texaco, Inc v. Williams*, 47 F.3d 765, 768 (5th Cir. 1995) ("Multiple claimants may reduce their claims to the equivalent of a single claim by stipulating to the priority in which their claims will be paid from the limitation fund.").

[16] *See In re Tidewater, Inc.*, 249 F.3d 342, 346 (5th Cir. 2001).

delay in resolving the limitation issue results in a general prejudice to Weber Marine.[17] However, this Court discerns no palpable prejudice in lifting the restriction against Claimants proceeding in state court and staying the limitation action in this Court. Accordingly,

**IT IS ORDERED** that Claimants' Joint Motion to Lift or Modify Stay[18] is GRANTED.

**IT IS FURTHER ORDERED** that Claimants' Stipulations[19] are hereby accepted by the Court.

**IT IS FURTHER ORDERED** that the restriction and stay of Claimants' prosecution of any action or proceeding against the Complainant, its underwriters or any of its property with respect to any claims for which Complainant seeks exoneration or limitation, including any claim arising out of or connected with any loss, damage, injury, or destruction resulting from the June 24, 2018 incident described in the Complaint, as previously ordered by this Court,[20] is hereby lifted, and this matter is stayed and administratively closed, with the Complainant Weber Marine retaining the right to reopen the limitation action in this Court once the state court proceedings have been completed.

New Orleans, Louisiana, this 27th day of August 2020.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

---

[17] R. Doc. 61.
[18] R. Doc. 59.
[19] R. Doc. 59-3 (Exhibit "A").
[20] R. Doc. 4, p. 2.